**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL PIETRZAK, JASON OSBORNE AND LISA OSBORNE, individually and on behalf of themselves and all others similarly situated, | Case No. 1:18 CV 06314 |
| Plaintiffs, | Judge Manish S. Shah |
| v. | Magistrate Judge Susan E. Cox |
| SAUL EWING ARNSTEIN & LEHR, a limited liability partnership, | |
| Defendant. | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

Plaintiffs, Michael Pietrzak, Jason A. Osborne and Lisa Osborne, by and through their counsel, Kenneth M. DucDuong of KMD Law Office, Ltd. and Stacy M. Bardo of Bardo Law, P.C., respectfully move the Court for final approval of the parties' Class Settlement Agreement.

Additionally, contemporaneously with this motion for final approval, Plaintiffs also filed their motion for an award of fees and costs pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k ("FDCPA") and the Class Settlement Agreement, preliminarily approved by this Court on September 23, 2019.

**ARGUMENT**

**I.      Material Terms of the Class Settlement Agreement**

1.      The Settlement Class preliminarily certified for settlement purposes should be now certified at final approval as follows:

> All persons who resided in Illinois and received a form collection letter materially identical or substantially similar to Exhibits 1, 2, and 3 attached to Plaintiffs' Second Amended Complaint between September 17, 2017 and

September 18, 2018.

Excluded from the Class are (1) unknown trustees, (2) unknown heirs of deceased individuals, and (3) corporate entities including corporations, limited liability corporations, limited partnerships and associations.

2.     During discovery and according to representations by Defendant, which were confirmed through affidavit, it was determined that there were 286 persons in the Class, including Plaintiffs.

3.     Pursuant to paragraph 9 of the Class Settlement Agreement, each class member, unless they timely opted out, will receive a not *de minimus* cash payment of at least $276.40, from the total class fund of $78,500. Separately, Defendant agreed to pay $5000 as an incentive service award to Michael Pietrzak, $1500 as an incentive service award to Jason Osborne and Lisa Osborne, and $45,000 as legal fees and costs to Class Counsel, based on counsel's lodestar. And, again, separately, Defendant agreed to pay the costs of class administration. These separate and additional payments were to ensure that each member of the Class who did not timely opt out would receive his or her full pro rata share of the class fund.

4.     Additionally, the scope of the release, to be provided by all persons who meet the criteria of the Class definition (unless s/he timely opted out), is appropriately limited to claims that were or could have been raised in this litigation arising from the FDCPA or FDCPA state equivalent and based upon that class member's receipt of a specific form letter.

5.     The Class Notice was targeted, fair and effective. Under Rule 23(c)(2) of the Federal Rules of Civil Procedure, notice must be directed in a reasonable manner

and designed to be the "best notice that is practicable under the circumstances . . ."
Fed. R. Civ. P. 23(c)(2)(B). On September 24, 2019, the Court preliminarily
determined that the proposed notice plan constituted "the best practical notice to
the class member." Dkt. 33.

6.      Here, the direct mail notice was particularly effective because, of the 284
class member notices mailed and then re-mailed, only 23 were eventually returned
as undeliverable. *See* Exhibit 1, First Class, Inc. Affidavit. However, because the
notice plan also included a publicly available website, http://www.18-cv-
6314classsettlement.com/, information was available about this case, the
settlement, and relevant deadlines for all to see, even if they did not receive a direct
mail notice. Further, Defendant mailed notice to the appropriate State Attorney
General pursuant to the Class Action Fairness Act and no objections or comments
were received.

7.      The response to the notice and settlement was overwhelmingly favorable as
no objections and only one opt-out was received. This effectively equates to over
99% support. Additionally, Plaintiff's counsel received calls from five different
settlement class members indicating their pleasure with the results.

## II.      Factors in Favor of Final Approval

8.      The Settlement is fair, reasonable, and adequate and deserving of final
approval. To determine whether final approval is warranted, courts in this district
typically examine the following factors: (1) the strength of the plaintiff's case; (2)
the risk, expense, complexity, and likely duration of further litigation; (3) the risk of
maintaining class action status throughout the trial; (4) the amount offered in

settlement; (5) the extent of discovery completed and the stage of the proceedings;

(6) the experience and views of counsel; (7) the presence of a governmental

participant; and (8) the reaction of the class members of the proposed settlement.

*Williams v. Quinn,* 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010), citing *Synfuel Techs. Inc.*

*v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006). These factors are

discussed in the paragraphs below.

9.     **First,** all class certification requirements are met. Plaintiff's motion to

preliminarily certify a settlement class set forth each requirement for certification

under Rule 23(a), i.e., numerosity, commonality, typicality, and adequacy of

representation, and Rule 23(b), i.e., predominance and superiority. This Court

considered these factors, and preliminarily approved the settlement class. Nothing

has changed between preliminary and final approval and no objections to any of the

class certification criteria were received.

10.     **Second**, courts consider the class's reaction when determining whether to

approve a settlement. *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F.

Supp. 2d 935, 958 (N.D. Ill. 2011). The fact that some class members object to a

settlement does not by itself prevent the court from approving the agreement.

*Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) (collecting cases in

which courts approved settlements despite objections); *Meyenburg v. Exxon Mobil*

*Corp.*, No. 2006 WL 5062697, at *6 (S.D. Ill. June 5, 2006) (stating that nine

objections is a "minuscule" amount). "A low rate of opt-outs or objections reflects

favorably on a settlement." *Kaufman v. Am. Express Travel Related Servs., Co.*, 2016

WL 806546, at *8 (N.D. Ill. March 2, 2016). Settlements are routinely approved over

far greater levels of exclusion and opposition. *See*, e.g., *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 24 (2d Cir. 1987) (otherwise fair settlement should not be deemed unfair despite opposition by 36% of the total class).

11.     Here, only 1 person opted out, or less than 0.35% of the class. There are no objections to the settlement. This number of opt-outs and objections supports final approval. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020–21 (N.D. Ill. 2000) (finding that a settlement where "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlements"). Unlike some class settlement where members receive only coupons or credit for future purchase, members in this Class will receive a cash payment greater than $276 each. In light of the statutory individual case cap of $1000 and as low of $1 or nothing if individual members decide to go it alone, this cash payment is substantial and meaningful to class members. The Plaintiffs appropriately considered the risk of loss here. In this case, the Defendant denied liability and there were potential factual issues with respect to interpretation of the form letter, the extent of confusion resulting from receipt of such letter, and the way Illinois and federal law were in possible conflict. While the FDCPA is a strict liability statute, there was no guarantee of a win at trial given the potential for success on affirmative defenses such as materiality and bona fide error. The costs associated with trial and the inevitable appeals would also be high. Given these factors, a guaranteed result (negotiated at arms-length and after written discovery) to each class member is the right outcome and thus, there should be no reason to deny final approval.

12.     **Third,** as noted above, this class settlement was in fact the result of an arms-length negotiation and back-and-forth discussion over several months. Both sides engaged in substantial give and take. The parties entered into settlement discussions only after they obtained discovery under the MIDPP and in response to written interrogatories and document production requests, and then confirmatory discovery to ascertain class size and the strengths and weaknesses of the parties' respective positions. Accordingly, the parties' and counsel's judgment in recommending this Settlement for final approval should be considered. *See*, e.g., *Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("This circuit has long deferred to the private consensual decision of the parties.")

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order granting final approval to the Parties' proposed class action settlement, approving the accompanying request for attorneys' fees and costs and Plaintiffs' incentive awards, and providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,


By: s/Kenneth M. DucDuong
Attorney for Plaintiffs

By: s/Stacy M. Bardo
Attorney for Plaintiffs

Stacy M. Bardo
Bardo Law, P.C.
22 West Washington Street, Suite 1500
Chicago, Illinois 60602
Tel: (312) 219-6980
Fax: (312) 219-6981
E-Mail: stacy@bardolawpc.com

Kenneth M. DucDuong
KMD Law Office, Ltd.
4001 West Devon Avenue, Suite 332
Chicago, IL 60646
Tel.: (312) 997-5959
Fax: (312) 219-8404
E-Mail: kducduong@kmdlex.com